# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

QIMONDA AG,

    Debtor in a Foreign Proceeding.

Case No. 09-14766-RGM
(Chapter 15)

### MEMORANDUM OPINION

This case is before the court on the motion of Dr. Michael Jaffé in his capacity as the foreign representative of Qimonda AG for an injunction pending recognition of a foreign proceeding. 11 U.S.C. §1519.

### Procedural Background

Qimonda AG filed an application with the Amtsgericht – Insolvenzgericht München (the "Munich Local Court") to open insolvency proceedings under the insolvency laws of Germany on January 23, 2009. The Munich Local Court appointed Dr. Michael Jaffé as the preliminary insolvency administrator. After his review, the Munich Local Court opened an insolvency proceeding over the estate of Qimonda AG on April 1, 2009. Dr. Jaffé was appointed the insolvency administrator. On June 15, 2009, Dr. Jaffé as the foreign representative of Qimonda filed an application for recognition of the German insolvency proceeding in this court. 11 U.S.C. §1515. The hearing on the application is set for July 22, 2009.

There are two actions pending against Qimonda in the United States. The first is a civil action pending in the United States District Court for the Eastern District of Virginia in which the

complainants are asserting claims under the Worker Adjustment and Retraining Notification Act ("WARN Act") arising from the closing of a factory near Richmond, Virginia. The second is an action pending before the International Trade Commission ("ITC") commenced by LSI Corporation and Agere Systems, Inc., ("LSI") against Qimonda and 13 other respondents seeking an order excluding certain computer chips manufactured by the respondents from being imported into the United States because they allegedly infringe LSI's patent. Dr. Jaffé seeks to have the two actions stayed as to Qimonda pending the recognition hearing. LSI objected. The WARN Act complainants did not appear.

## Corporate Structure

Qimonda designs semiconductor memory technologies and develops, manufactures, markets and sells a large variety of semiconductor memory products. It specializes in the production of dynamic random access memory. Infineon Technologies AG holds 28.44% of Qimonda's share capital and Infineon Technologies Investment B.V., a wholly-owned subsidiary of Infineon Technologies AG, holds 49.03% of Qimonda's share capital. The remaining 22.53% is publicly held.

Qimonda is the 100% owner of Qimonda North America Corp., which in turn is the 100% owner of Qimonda Richmond, LLC. Both are United States subsidiaries and both are in chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware. Qimonda is also the parent company of numerous other non-U.S. subsidiaries, several of which are also in insolvency proceedings.

**The Litigation**

<u>WARN Act Litigation.</u>  Qimonda operated a production facility in or near Richmond, Virginia, which it closed.  Former employees, asserting that their rights under the WARN Act were infringed, filed a complaint in the United States District Court for the Eastern District of Virginia.  Qimonda asserts that it was not properly served.  No motions or answers have been filed and no discovery has been commenced.

<u>International Trade Commission Actions.</u>  There are two related actions pending before the ITC.  The first action was commenced on December 11, 2008.  All filings were due on or before June 23, 2009.  The trial is scheduled for July 20 - 24, 2009.  In the second action, a trial was held on June 1, 2009.  Initial post-trial briefs, proposed findings of fact and conclusions of law and final exhibit lists were due June 26, 2009.  Reply briefs and objections and rebuttals to proposed findings of fact were due July 2, 2009.  The initial determination date is October 16, 2009, and the target date for the decision is February 16, 2010.

The action scheduled for trial on July 20 - 24, 2009, concerns LSI's patent.  It asserts that the respondents are infringing its patent and seeks an order barring infringing devices from being imported into the United States.   There are three issues that relate to Qimonda.  All respondents have attacked the validity of LSI's patent.  This issue is being handled by a single team of attorneys on behalf of all the respondents.  Qimonda has participated in this effort to date.  While there are multiple attacks on LSI's patent from the various respondents, all the issues have been identified and are part of the common defense.

Each respondent also asserts that, if LSI's patent is valid, its particular procedures do not infringe LSI's patent.  These defenses are particular to each respondent and each respondent is

responsible for its own defense. All 14 respondents have been allocated a total of 20 hours of trial time, to be divided among themselves, to present these defenses. At the hearing in this court, counsel estimated that this issue could be tried by Qimonda in less than a day if it were heard separately at a later date.

The third issue relating solely to Qimonda is its defense that if the patent is valid and if its process does infringe LSI's patent, it nonetheless holds a valid license from LSI to produce its integrated circuits. This issue is not shared by the other respondents and is a basic contract matter.

The final determination of the litigation is not anticipated until January or February 2010. The administrative law judge's determination is reviewed by the Commission. The Commission's determination is then reviewed by the President who has delegated these matters to the United States Trade Representative. The result, if LSI is successful, is an order that bars the infringing products from importation into the United States. Monetary damages for infringement are not determined in this proceeding.[1] LSI's patent expires in July 2010.

Qimonda asserts that its full participation in the ITC litigation will cost about $500,000 during the next month. Qimonda has about 6,000 wafers from which about 15 million integrated circuits could be manufactured. All are located in the United States. The past practice was to export the wafers to production facilities abroad and then re-import the completed integrated circuits or the devises into which they are incorporated. Qimonda has closed or idled all of its production facilities and does not intend at this time to manufacture additional integrated circuits.

---

[1] Monetary damages, if any, will be determined by the United States District Court for the Eastern District of Texas were LSI filed a concurrent infringement suit. That suit is stayed by the pendency of the ITC action. If successful in the ITC action, LSI will return to the district court where monetary damages may be determined.

**Standard for Issuing Injunction**

Section 1519(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief" under §1519. The Supreme Court discussed the standards applicable to the issuance of injunctions in *Winter v. Natural Resources Defense Council, Inc.,* ___ U.S. ___, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). It stated:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.,* ___ U.S. at ___, 129 S.Ct. at 374, 172 L.Ed.2d at 261. The Court of Appeals for the Fourth Circuit applied the restated test in *WV Ass'n of Club Owners and Fraternal Services, Inc. v. Musgrave,* 553 F.3d 292, 298 (4th Cir. 2009). This test is similar, but not identical to the traditional established Fourth Circuit test in *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Manufacturing Co., Inc.,* 550 F.2d 189 (4th Cir.1977). There are four factors under *Blackwelder*: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.

**Discussion**

<u>WARN Act Litigation.</u>  The issues raised in the WARN Act litigation are resolved relatively easily. The issue upon which Qimonda must prevail for an injunction to issue is whether an order of recognition will be entered, not whether Qimonda will prevail on the merits of the WARN Act litigation. If the foreign proceeding is recognized, §362 of the Bankruptcy Code will apply with

respect to the debtor and property of the debtor that is within the territorial jurisdiction of the United States. 11 U.S.C. §1520(a)(1). Section 1519 permits the court to protect those assets during the gap period – the period between the filing of the application for recognition and the hearing on the application. If the application for recognition is granted, the claim will be resolved within the bankruptcy proceeding as will all other claims. Without the injunction, both parties will expend their resources unnecessarily, and in the case of Qimonda, ultimately to the detriment of all creditors. It is more efficient for the debtor and the creditors to resolve all claims in the claims resolution process of the insolvency proceeding. In addition to conserving monetary resources, the applicant also conserves the time and attention of the foreign administrator at this early stage in the insolvency proceeding and allows him to prioritize actions necessary to maximize the recovery for all creditors.

There is little or no harm to the WARN Act plaintiffs. At worst there are delays for three weeks. There is a public benefit, a benefit to all creditors, because the stay will stop the race to the courthouse and the effort to dismember the debtor piecemeal. One central principle of bankruptcy is the requirement that all creditors within a class be treated equally. Permitting one creditor to win the race to the courthouse – particularly at this late stage – violates this principle. Preference litigation to avoid the results of this late race may not be available and would, in any event, require additional expenditure of resources at a later date. *See* 11 U.S.C. §1521(a)(7).

The ITC Litigation. The ITC litigation is more complicated. It is not uncommon for bankruptcy courts to grant relief from the automatic stay to allow complicated disputed claims to be liquidated in other courts. This is especially true when a case is ready for trial, the trial is ready to commence, the debtor is one of a number of defendants, there are common claims or defenses and it is clear that the claim must be liquidated at some point. In some cases it is better to permit the

6

litigation to go forward so that the claim is liquidated than to effectively sever the debtor out of the case and require a second long, involved and complicated trial at a later date. This must be weighed against the ability of the debtor to adequately participate in the litigation.

In this case, the ITC litigation is complicated. The trial date is close at hand. The parties will expend a lot of effort in the next few weeks to be ready for trial. It will be expensive for Qimonda to litigate the matter. Counsel suggests, without contradiction, that it would spend more than $500,000 over the next three weeks to finish preparing for trial and to fully participate in the trial. Qimonda agrees that is has the resources to do this although the liquidity of the resources was not addressed at the hearing. It was a very large company with annual revenue in the billions of dollars. It has valuable assets that can be liquidated. But, the loss of the monetary resources and the attention necessary to fully participate are real losses to Qimonda and will never be recovered. In addition to the money necessary to pay counsel, it must prepare its witnesses and fly them to the United States for the trial, making it impossible for them to be available for other matters in Germany, if necessary. Further participation by Qimonda harms Qimonda. The costs and time lost are not recoverable.

The establishment of the validity of LSI's patent is the critical consideration. LSI ought not be put through a second trial to establish the validity of its patent solely for Qimonda. Here, though, Qimonda has fully participated in the common defense relating to the patent validity. The entire defense is being handled by a single team of attorneys who will continue to challenge the validity of the patent on behalf of the remaining 13 respondents. Qimonda has had ample opportunity to raise its ideas and theories. It will be adequately represented on this issue by the common defense team. An injunction can be issued on the condition that Qimonda be bound by the final decision relating to the validity of LSI's patent to the same extent as if it had fully participated in the trial. If

the ITC upholds LSI's patent, Qimonda will be in the same position as all the other respondents with respect to this finding in resolving its other two issues before the ITC. The other two issues, the non-infringement and the licensing issues, can be tried separately without significant prejudice to either LSI or Qimonda.

LSI makes an important argument. It argues that if Qimonda is severed from the ITC litigation, LSI may be denied effective relief as to Qimonda. It points out that if Qimonda is severed from the ITC litigation, the final ITC order may not include Qimonda and LSI will lose the benefit of an exclusionary order as to Qimonda, and, therefore, some of the protection of its patent. While true, the circumstances are more complex. LSI's patent has a limited remaining life. It expires in July 2010. There will be four to six months during which an ITC order would be effective, assuming no appeals are taken. On the other hand, Qimonda is no longer manufacturing the product and will likely not be in a position to manufacture any until the patent expires. It does, however, have an inventory of wafers. The inventory is in the United States. As long as the wafers remain in the United States, they are not subject to an ITC exclusionary order. An exclusionary order only prohibits the wafers, or integrated circuits manufactured from them, from being imported into the United States. An exclusionary order would not affect wafers, or integrated circuits manufactured from them, that are already in the United States.[2] The duration of an exclusionary order would be short in light of the anticipated schedule for the ITC determination and it appears that Qimonda will not seek to import devices allegedly infringing LSI's patent during this period. If appeals and bonds

---

[2]To further complicate the matter, the wafers are actually property of one of Kimono's subsidiaries which is presently in a chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware. Counsel advises that the wafers are part of the collateral for a $30 million debtor-in-possession loan.

are considered, an exclusionary order may not become effective before LSI's patent expires in July 2010.

There is also the consideration of the outcome of the recognition proceeding. The ITC trial will commence on July 20, 2009, and conclude on July 24, 2009. The hearing on the recognition application will be held on July 22, 2009, and likely be concluded before the ITC trial and certainly before any final ITC determination. A stay may become effective during the ITC trial itself. It is likely that Qimonda will be successful on its application for recognition and that all action will be stayed when §362 becomes effective. While these considerations weigh in favor of Qimonda, the court retains the ability to craft appropriate relief for LSI should it become necessary.

LSI raises one last interesting point. It argues that even if Qimonda is successful in obtaining an order of recognition and even if the automatic stay becomes effective, the ITC action is an action by a governmental unit to enforce its police and regulatory power and, as such, is excluded from §362(a). 11 U.S.C. §362(b)(4) and §1519(d); *In the Matter of Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same,* 2009 ITC Lexis 841 (ITC June 3, 2009). In *Semiconductor Chips,* the Commission held that:

> As a governmental agency, the Commission has jurisdiction to determine whether the automatic stay applies to Section 337 proceedings. *See Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir. 1990). Preventing violation of domestic industries' intellectual property rights falls squarely within the "regulatory power" of a "governmental unit." Therefore, Section 337 falls within the exception of section 362(b)(4).

*Id.* at 109.

That holding is not applicable in this case. In this case, the Commission is not a governmental unit exercising a police or regulatory power. It is the tribunal before which the actions

are pending. The ITC did not initiate the actions before it. LSI initiated them. LSI has settled with several respondents who are no longer parties to the action. The ITC reviewed the settlements just as this court approves settlements in bankruptcy cases. The ITC has an Office of Unfair Import Investigations which is separate from the Commission itself. It participates in each action and files pleadings before the Commission itself and its administrative law judges. It functions similarly to the United States Trustee in this court. The OUII appears before the Commission just as the United States Trustee appears before this court.

The ITC serves several functions. In the LSI patent litigation before the ITC, it is acting in its judicial capacity, not its enforcement capacity. It is adjudicating a case involving an alleged infringement of a patent by certain imports. The case was commenced by individual private parties against individual private parties. The private parties are the real parties in interest; they have their own attorneys and are litigating the case in their own interests. In its judicial capacity, the Commission itself acts fairly, objectively and impartially. It is the forum for the litigation; the tribunal before which the case is tried. It is not the instigator or the prosecutor. The exception to §362(a) for governmental units under §362(b)(4) and §1519(d) is not applicable in this case.

## Conclusion

An injunction will issue as to the WARN Act plaintiffs and LSI in the ITC action to the same effect as if §362(a) were applicable.

Alexandria, Virginia
July 16, 2009

/s/ Robert G. Mayer
Robert G. Mayer

                United States Bankruptcy Judge

copies to:

Jeff A. Showalter
Robert H. Chappell, III
Dennis J. Early
William A. Gray

15294