# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| In re: | |
|---|---|
| QIMONDA AG, | Case No. 09-14766-RGM |
|  | (Chapter 15) |
| Debtor. | |

## MEMORANDUM OPINION

THIS CASE is before the court on the motion of Dr. Michael Jaffé in his capacity as the duly authorized foreign representative of Qimonda AG to amend the supplemental recognition order entered by this court. On July 22, 2009, this court entered an order granting the petition of Dr. Michael Jaffé to recognize the German insolvency proceeding of Qimonda AG. It also entered a supplemental order providing among other matters that §365 of the United States Bankruptcy Code would be applicable to this chapter 15 case.

The application of §365 to this case substantially undermines the provisions of the German Insolvency Code, particularly §103, which addresses how executory contracts are dealt with under the German Insolvency Code. Both the United States Bankruptcy Code and the German Insolvency Code recognize that executory contracts must be addressed in some manner in bankruptcy proceedings. Under the German Insolvency Code, the administrator may elect non-performance. Under the United States Bankruptcy Code, the trustee may reject an executory contract, however, there are certain rights parties to executory contracts retain. These rights are inconsistent with those provided under the German Insolvency Code. The foreign representative requests that the supplemental order be modified to exclude §365 so that there is no question that the German Insolvency Code controls in these circumstances.

1

The objecting parties are principally parties who have licenses or have licensed intellectual property, particularly patents. They fear that they will be treated less favorably under the German Insolvency Code than under the United States Bankruptcy Code and understandably prefer that the United States Bankruptcy Code control the disposition of their executory contracts and their rights.

The purposes of chapter 15 were enunciated by Congress in §1501. Chapter 15 is designed to further cooperation between courts of the United States and of foreign countries involved in cross-border insolvency cases; to provide greater legal certainty for trade and investment; to promote fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, the debtor and other interested entities; the protection and maximization of the value of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. 11 U.S.C. §1501(a). Chapter 15 is an effort to assist in providing a systematic and consistent resolution to cross-border insolvencies. Undoubtedly, there will be conflicts between various insolvency codes as each nation enacts its own insolvency code which it feels is best suited to its circumstances. The conflict between §103 of the German Insolvency Code and §365 of the United States Bankruptcy Code is such an example.

The principal idea behind chapter 15 is that the bankruptcy proceeding be governed in accordance with the bankruptcy laws of the nation in which the main case is pending. In this case, that would be the German Insolvency Code. Ancillary proceedings such as the chapter 15 proceeding pending in this court should supplement, but not supplant, the German proceeding.

That objective is particularly relevant in this case where there are many international patents. The patents themselves are issued under the laws of various nations. While there may be multiple international patents, the multiple international patents protect the same idea, process or invention

in the country that issued the patent. If the patents and patent licenses are dealt with in accordance with the bankruptcy laws of the various nations in which the licensees or licensors may be located or operating, there will be many inconsistent results. In fact, the same idea, process or invention may be dealt with differently depending on which country the particular ancillary proceeding is brought. Rather than having a coherent resolution to Quimonda's patent portfolio, the portfolio may be shattered into many pieces that can never be reconstructed. In this case, Qimonda licensed its patents to companies that are operating in various nations. It is clear that the patent rights are not being exploited solely, and even possibly principally, in the United States. In fact, they are being utilized throughout the world. If the laws of the various nations in which the patents are being used would be applicable, there will be many different treatments of the patents that have been licensed by Qimonda AG and many different and inconsistent results throughout the world. This is detrimental to a systematic bankruptcy proceeding and detrimental to the resolution of the German bankruptcy proceeding itself. It diminishes the value of these assets. It results in an inefficient insolvency administration. It may well be detrimental to parties who are or wish to license the patents. It is not difficult to envision that if the patent portfolio is splintered without overall administration or control, some parties may be left with incomplete patent protection. Holding an American patent without holding a patent enforceable in the Europe may significantly restrict its use and utility. This is at odds with the Congressionally stated purposes in §1501.

Some of the licensees complain that they paid valuable consideration, indeed millions of dollars, for licensing rights. Under the German Insolvency law, the administrator may, they argue, in essence, terminate the license and submit the license for sale on the open market by exercising his right of non-performance. This may cause them to bid for licenses for which they have already

paid. This is an unfortunate but an inevitable result of the bankruptcy of any company. Parties with who a debtor has dealt may be adversely affected by the bankruptcy. The essential question is how to deal with business failures. Congress determined in enacting chapter 15 to cooperate on an international basis and to give precedence to the main proceeding.

Some licensees also argue that the result under §365 of the United States Bankruptcy Code is, in fact, the same result that will be obtained under §103 of the German Insolvency Code. The administrator does not agree and it is clear that the dispute must be resolved by litigation if no amicable resolution is achieved. The legal theory arises under German law and is best resolved by German courts. It should not be complicated by superimposing §365 on the analysis.

All the patents should be treated the same. There should not be disparate results simply because of the location of a factory or research facility or corporate office. This would be the result if the supplemental order were left in place. It is clear that the inclusion of §365 in the supplemental order was improvident. It had unintended consequences that significantly and adversely affect the main proceeding in Germany.

The court retains the jurisdiction to modify the supplemental order from time to time to address the exigencies of a case as the case matures and to further the Congressional objectives of chapter 15. *See* 11 U.S.C. §§105 and 1522(c).

The motion of the foreign administrator will be granted and the supplemental order will be amended.

Alexandria, Virginia
November 19, 2009

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

4

Copy electronically to:

Jeffrey A. Showalter
Robert E. Chappell, III
United States Trustee
Robert K. Coulter

15624