# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

QIMONDA AG,

    Debtor.

Case No. 09-14766-RGM
(Chapter 15)

## MEMORANDUM OPINION

The question presented is whether the automatic stay is applicable to an action pending before the International Trade Commission. The ITC argues that the action is an enforcement of its police or regulatory power and is excluded from the automatic stay.[1] 11 U.S.C. §362(b)(4).

## Prior Bankruptcy Proceedings

Qimonda AG filed an application with the Amtsgericht-Insolvenzgericht München ("the Munich Local Court") to open insolvency proceedings under the German insolvency law. The Munich Local Court appointed Dr. Michael Jaffé as the preliminary insolvency administrator. After receiving his report, the court opened the insolvency proceeding and appointed him the insolvency administrator.

Dr. Jaffé, as Qimonda's foreign administrator, filed a request for recognition of a foreign main proceeding under 11 U.S.C. §1515 and a motion for provisional injunctive relief pending recognition of the foreign main proceeding. He sought preliminary application of §362(a) to stay the ITC proceeding as to Qimonda. This court granted the provisional relief requested. *In re*

---

[1] Section 362(b)(4) excludes only acts under subsection 1, 2, 3 and 6 of §362(a). Acts by governmental units covered under subsections 4, 5, 7 and 8 are stayed.

1

*Qimonda AG,* 2009 WL 2210771 (Bankr.E.D.Va. 2009). The court later entered a recognition order recognizing the German insolvency proceeding as a foreign main proceeding 11 U.S.C. §1517. The automatic stay arises upon entry of a recognition order. 11 U.S.C. §1520. LSI and the ITC argued at the recognition hearing that the automatic stay did not apply to the ITC proceeding because the proceeding was an enforcement proceeding under the ITC's police and regulatory powers. This Memorandum Opinion addresses that question.

**Proceedings Pending before the ITC**

LSI Corporation and Agere Systems, Inc., initiated an action against twenty respondents, including Qimonda, before the ITC under §337 of the Tariff Act of 1930, 19 U.S.C. §1337, *et seq.* They alleged that the respondents were infringing their patents and sought an order prohibiting any infringing devices from being imported into the Untied States. *In the Matter of Certain Semiconductor Integrated Circuits Using Tungsten Metallization, Inv. No. 337-TA-648.* Several respondents settled with LSI and Agere and were dismissed as parties to the action. The ITC reviewed and approved the settlements. In addition to the parties, the Office of Unfair Import Investigations, which is separate from the Commission itself, also participated in the case. It filed pleadings and argued motions, but the laboring oar was, and continues to be, pulled by the parties themselves. The action was pending before an administrative law judge when the recognition order was entered and the automatic stay became effective. The matter had been fully briefed and was ready for trial before the administrative law judge.

## Discussion

Section 362(b)(4) states:

> (b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay – . . .
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. §362(b)(4).

Section 362(b)(4) requires three elements: (1) a governmental unit (2) that is commencing or continuing an action or proceeding (3) to enforce that governmental unit's police or regulatory power. Two questions are presented: Is the action pending before the ITC the continuation of an action *by* the ITC? Is the action an enforcement of the ITC's police and regulatory power?

## Continuation of Action by Governmental Unit

The governmental unit must be the moving party, the party enforcing its police and regulatory power. The statutory language is clear: There must be a commencement or continuation of an action *"by* a governmental unit" and the police and regulatory power sought to be enforced must be "*such* governmental unit's" police and regulatory power. 11 U.S.C. §362(b)(4) (emphasis added). The plain meaning of the provision is that a governmental unit must bring the action, not a private party. *See* Collier on Bankruptcy §362.05 (15th ed. Rev., 2010).

Actions brought by private entities are not within the exception of §362(b)(4). In *Hudson River Sloop Clearwater, Inc. v. Revere Copper and Brass, Inc., (In re Revere Copper and Brass,*

*Inc.),* 32 B.R. 725 (S.D.N.Y.1983), Hudson River Sloop Clearwater, Inc., and National Resources Defense Council, Inc., two private, non-governmental entities, filed a suit against Revere Copper and Brass, Inc.*,* which had filed a chapter 11 petition in bankruptcy almost a month before the suit was filed. *Id.* at 726. The debtor successfully sought to enjoin the suit and hold the plaintiffs in contempt for violating the automatic stay. On appeal to the District Court, the plaintiffs argued that "they should be given the status of a governmental unit" and that because they were "in the position of private attorney generals seeking to enforce the environmental laws they should be given the same status as governmental units with respect to" the debtor, that is, that the exception under §362(b)(4) should apply to them as well. *Id.* at 727. The District Court disagreed and affirmed the Bankruptcy Court. It stated:

> Not only is this provision explicitly limited to true governmental entities, but the legislative history of this definitional section provides:
>
>> Entities that operate through state action such as through the grant of a charter or license, and have no further connection with the state or federal government are not within the contemplation of the definition.
>
> H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 24 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5810, 6268.
>
> Clearly, both the statutory language and the legislative history demonstrate that the term "governmental unit" in the bankruptcy code refers exclusively to actual governmental groups and not to organizations acting in a governmental capacity. The exception to the automatic stay for governmental units was intended to allow state, federal or foreign entities to continue to proceed or to commence actions against debtors.

*Id.* at 727. *See also United States v. Environmental Waste Control, Inc.,* 131 B.R. 410, 422 (N.D.Ind.1991) (§362(b)(4) is confined to governmental authorities seeking to enforce regulations).

The ITC argues that it is the moving party and that LSI and Agere are simply complaining parties. This argument requires an examination of the roles of the ITC on the one hand and LSI and

4

Agere on the other. LSI and Agere initiated the proceeding. The proceeding is pending before an administrative law judge, not the Commission itself.

LSI and Agere have controlled the litigation from the beginning. The ITC does not control the litigation before the administrative law judge. LSI and Agere negotiated settlements with various respondents who have been dismissed from the case. The ITC did not participate in the negotiation of the settlements. The administrative law judge hearing the matter did not participate in the negotiations of the settlements. There is no indication that the staff attorneys from the Office of Unfair Import Investigations had any significant participation either. It is true that the ITC approved the settlements, but this is little different from a bankruptcy court approving settlements or any other court granting motions to dismiss a party from the case.

The participation of the Office of Unfair Import Investigations is not control over the proceedings. There are three parties or groups of parties: the complainant who is asserting the validity of a patent; the respondent who is alleged to have infringed the patent; and a staff investigative attorney from the Office of Unfair Import Investigations. The staff attorney participates in the proceeding by filing pleadings and arguing matters before the administrative law judge, but he does not control or direct either the complainant's actions or the respondent's actions.

The closest that the ITC comes to controlling the litigation is the standing rules of procedure it promulgated. They are similar to the Federal Rules of Civil Procedure. *See* Rules of Practice and Procedure, 19 C.F.R. parts 201 and 210. They are applicable to all such actions and are intended to be fair and evenhanded to all the participants. They assist in the orderly disposition of matters before the administrative law judges. They do not influence the substantive rights of the parties and are not control over the litigation.

The reality is that the ITC and its administrative law judges are the forum before whom the action was brought by LSI and Agere and who are seeking the protection of their property rights. The proceeding is adversarial and subject to the adjudicative provisions of the Administrative Procedure Act, 5 U.S.C. §§551, *et seq.* The administrative law judge makes an initial determination which contains findings of fact and conclusions of law with respect to the issues in controversy. In this action, those issues include the validity of the patents, the scope of the patents, the infringement of the patents, and the scope of any licenses previously granted. Any party may petition the ITC to review the initial determination and to modify or reverse it. The ITC may also review the initial determination on its own motion. Rather than being the governmental unit that is enforcing the patents, the ITC is the forum before which private litigants are enforcing their patents. The action is not being prosecuted *by* the ITC, but *before* the ITC. LSI and Agere are prosecuting it. The exception of 11 U.S.C. §362(b)(4) is not applicable.

## **Police or Regulatory Power**

The Court of Appeals for the Fourth Circuit set out the test for determining whether a particular action by a governmental unit is an exercise of its police or regulatory power. It stated:

> The difficulty in applying this exception comes in distinguishing between situations in which the state acts pursuant to its "police and regulatory power" and situations in which the state acts merely to protect its status as a creditor. To make this distinction, we look to the purpose of the law that the state is attempting to enforce. If the purpose of the law is to promote "public safety and welfare," *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.),* 128 F.3d 1294, 1297 (9th Cir.1997), or to "effectuate public policy," *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942(6th Cir.1986) (internal quotation marks omitted), then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," *Universal Life Church,* 128 F.3d at 1297, or to "adjudicate private rights," Edward Cooper Painting, 804 F.2d at 942(internal quotation marks omitted), then the

exception is inapplicable. The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case. *See United States v. Commonwealth Cos. (In re Commonwealth Cos.),* 913 F.2d 518, 523 n. 6 (8th Cir.1990); *United States v. Grooms,* No. Crim. A. 96-00071-C, 1997 WL 578752, at *3 (W.D.Va. Aug.29, 1997).

*Safety-Kleen, Incorporated (Pinewood) vs. Wyche (In re Safety Kleen Corporation),* 274 F.3d 846, 865 (4th Cir. 2001).

*Safety-Kleen* sets out two tests to determine the applicability of §362(b)(4): the pecuniary interest test and the private rights test. *EEOC v. McLean Trucking Co.,* 834 F.2d 398, 401 (4th Cir. 1987 (applying private rights test); *In re Cutting Edge Enterprises, Inc.,* 372 B.R. 255, 262 (Bankr.M.D.N.C.2007) (applying pecuniary interest test). The pecuniary interest test addresses the question of whether the governmental unit is acting to further public health, safety or welfare as opposed to furthering the governmental unit's own pecuniary interest. There must be a recognizable public purpose and if there is, it may not be used as a ruse to further the governmental unit's pecuniary interest. The private rights test addresses the question of whether the governmental unit is acting to further public health, safety or welfare as opposed to furthering a private party's rights. Again, there must be a recognizable public purpose and if there is, it may not be used as a ruse to further the rights of a private party.

The Court of Appeals recognized that many actions contain both a public purpose and either a governmental unit's own pecuniary interest or a private party's rights. *Safety-Kleen,* 274 F.3d at 865-866. Many statutes have dual (or even multiple purposes) and, for a creative lawyer, it is easy to find a public purpose in every statute. *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374, 389 (6th Cir. 2001) ("All acts of Congress by definition declare national policy, and lawsuits to enforce those acts necessarily effectuate the public policy of the United States."). If the test were simply to find a public purpose or a public policy, virtually all actions brought by governmental units would

be excluded from §362(a) by virtue of §362(b)(4). The exception would devour the rule. The Court of Appeals for the Fourth Circuit discussed the problem. It stated:

> Of course, many laws have a dual purpose of promoting the public welfare as well as protecting the state's pecuniary interest. The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable. Rather, we must determine the primary purpose of the law that the state is attempting to enforce. *See Yellow Cab Coop. v. Metro Taxi, Inc. (In re Yellow Cab Coop.), 132 F.3d 591, 597 (10th Cir.1997); Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 367-68 (6th Cir.1997); EEOC v. Rath Packing Co., 787 F.2d 318, 324 (8th Cir.1986). But see Universal Life Church, 128 F.3d at 1299* ("Only if the action is pursued *solely* to advance a pecuniary interest of the governmental unit will the automatic stay bar it." (emphasis added) (internal quotation marks omitted)). Likewise, the fact that the state action requires the debtor to make an expenditure does not necessarily mean that the regulatory exception is inapplicable. *See, e.g., Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Refining Co.),* 805 F.2d 1175, 1186 (5th Cir.1986) (holding that the EPA could force debtor to comply with environmental regulations even though compliance would cause debtor to spend money).

*Safety-Kleen,* 274 F.3d at 865-866.

An action is not an action to enforce a police and regulatory power if the governmental unit is seeking primarily to further its pecuniary interests. *In re Thomassen,* 15 B.R. 907, 909 (9th Cir. BAP 1981). The governmental unit is acting in its capacity as a creditor, not in its capacity as protector of the public's health or safety. *See e.g., F.T.C. v. AmeriDebt,* 343 F.Supp.2d 451 (D.Md.2004). Such actions fall outside the scope of the §362(b)(4) exception. The purpose of the Bankruptcy Code is to resolve debtor-creditor issues. The automatic stay furthers this public policy. In a liquidation case, it enables the trustee to assemble the debtor's assets, reduce them to money and distribute them in accordance with the distribution scheme established by Congress. In a reorganization case, it gives the debtor a brief respite to attempt to restructure its financial affairs and repay its creditors. When a governmental unit seeks to exercise its creditor remedies under the guise of its police or regulatory powers, it disrupts the bankruptcy proceeding to the detriment of

other creditors. *See Board of Supervisors for the County of Campbell v. Royal (In re Royal),* 137 Fed.Appx. 537 (4th Cir.2005) (unpublished opinion).

An action is not an action to enforce a police and regulatory power if the governmental unit is seeking primarily to further private rights. *EEOC v. McLean Trucking Co.,* 834 F.2d at 401. In *McLean Trucking,* the EEOC sued McLean Trucking which was in bankruptcy. The suit sought an injunction against further discrimination and back pay for several affected employees. The Court of Appeals easily found that a suit for injunctive relief was within the police and regulatory exception to the automatic stay. The real issue was the back pay issue. The back pay would be paid solely to the affected employees. This looked like the government suing to enforce the private rights of the affected employees by merely substituting itself for a private party. The exclusion under §362(b)(4) is for the benefit of the public, not private parties. Private parties should not be able to achieve indirectly what they may not achieve directly. *See also E.E.O.C. v. Rath Packing Co.,* 787 F.2d 318 (8th Cir.1986).

The Court of Appeals had to determine the primary purpose of the Equal Employment Opportunity Act because the public purpose of the Act and the private rights of interested parties were intertwined. *Safety-Kleen*, 274 F.3d at 865. In *McLean Trucking Co.,* the Court of Appeals found that the additional prayer for back pay effectuated the strong public policy of eliminating discrimination in the workplace which was the primary purpose of the statute. 834 F.2d at 402. *See also In re Cloverleaf Enterprises, Inc.,* 2009 WL 3066643 (Bankr.D.Md.2009.)

The ITC argues that the public policy underlying the Tariff Act of 1930 is the protection of domestic industries from patent infringement. The remedy is preventing infringing articles from being imported into the United States. This public policy is not sufficient. It is as stated in *Chao*

*v. Hospital Staffing Services, Inc.*, the type that can be found in every public law. It is unlike the public policy prohibiting racial, gender or age discrimination in the workplace. The public policy argument is belied in this case by the fact that several respondents were dismissed from the ITC action because they entered into a settlement with LSI and Agere. Settlements are within the province of the private litigants, although subject to approval by the ITC. The terms of the settlement agreements were not presented at the hearing. It is not known how they protected domestic industry, but it is not difficult to infer that such settlements generally require the respondent to pay a license fee to LSI and Agere. They do not change the essential dynamics of the domestic market and are the same results that can be achieved in a patent infringement suit. A patent infringement suit is not within the ambit of §362(b)(4). It is brought by a private litigant for its own benefit. The resolution affects the parties but not the essential dynamics of domestic industry. The result in a patent infringement case and an ITC action are essentially the same. The remedy in an ITC action is broader as to imported goods, but does not affect domestically produced goods. The primary purpose of the applicable provisions of the Tariff Act of 1930 is to protect patent holders. The action is primarily for the benefit of the private parties.

*Spansion, Inc.*, 418 B.R. 84 (Bankr.D.Del.2009) addressed the same issue. It found that "the ITC offered a public policy argument in broad strokes only, and presented no specific evidence that the public interest does and should outweigh the considerations involving adjudication of the private dispute between Spansion and Samsung." *Id.* at 95. That Bankruptcy Court concluded that the ITC was not exercising its police and regulatory power and that the action was not exempt from the automatic stay under Bankruptcy Code § 362(b)(4). *Id.* at 95. This case is no different from *Spansion.* While there is no pecuniary gain for the government in an ITC action, there is also no

significant public policy advanced by the ITC action presented in this case. LSI's and Agere's objectives were to enforce their patent rights against private parties for their own benefit. The ITC action furthers the goal of preventing unfair competition at best only incidentally. If the ITC action were brought *by* the ITC – which it is not – the ITC would be doing so for the private benefit of LSI and Agere.

### Conclusion

The pending ITC action does not satisfy the pecuniary interest test and the private rights test. The particular action now pending before the ITC is not within the ambit of §362(b)(4). It is stayed by the automatic stay.

Alexandria, Virginia
February 16, 2010

/s/Robert G. Mayer

Robert G. Mayer
United States Bankruptcy Judge

copies to:

Robert K. Coulter
Jeffrey Anderson Showalter
Robert H. Chappell, III

15756