**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| **QIMONDA AG** | )    **Case No. 09-14766-RGM** |
| | )    **Chapter 15** |
| **Debtor** | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on the Foreign Representative's Motion to Enforce

and/or Apply the Automatic Stay (Docket No. 673) in order to enjoin the prosecution of a

lawsuit recently filed in the Northern District of California by Altis Semiconductor SNC

("Altis") against Qimonda AG ("Qimonda") and its affiliate, Qimonda Licensing LLC

("Qimonda Licensing").  Altis has filed an Opposition (Docket No. 677), in which Altis opposes

the relief sought by the Debtor, and in the alternative, requests relief from the automatic stay.

The Foreign Representative has filed a Reply Memorandum (Docket No. 680).  The Court heard

the arguments of the parties on October 9, 2012.

For the reasons stated below, the Court will order that:  (1) Altis's lawsuit against

Qimonda, insofar as it alleges pre-petition breaches of the Joint Development Agreements,

and/or pre-petition breaches of confidentiality, is a violation of the automatic stay under 11

U.S.C. § 362(a)(1), and will be enjoined (or alternatively, will be enjoined pursuant to 11 U.S.C.

§ 1521(a)(1)); (2) Altis's request that the District Court declare the sale to Adesto "void" is an

impermissible collateral attack on this Court's March 11th Order, and will be enjoined; (3) Altis

will be enjoined from seeking relief under Paragraph 2 of its Prayer for Relief, that the

"Defendants be enjoined from selling or licensing any intellectual property co-owned with Altis

through [the parties'] joint development relationship to the detriment of Altis," as being an

1

impermissible attempt to exercise control over property of the debtor within the territorial

jurisdiction of the United States under 11 U.S.C. § 362(a)(3) (or alternatively, will be enjoined

pursuant to 11 U.S.C. § 1521(a)(1)); (4) Altis's Motion for relief from the automatic stay will be

granted in part, as to any alleged post-petition breaches of the JDA's and/or alleged violations of

fiduciary duty, though collection of any verdict in favor of Altis will be stayed as to assets of the

debtor located within the territorial jurisdiction of the United States pursuant to 11 U.S.C.

§1521(a)(2); and (5) the Altis lawsuit is not a violation of the stay as to Qimonda Licensing, and

the Court will decline to extend the automatic stay as to Qimonda Licensing.

## FINDINGS OF FACT

For purposes of this Opinion, the Court assumes familiarity with the underlying facts of

the Qimonda Chapter 15 case pending in this Court. *In re Qimonda AG*, 462 B.R. 165 (Bankr.

E.D. Va. 2011).[1]  In addition, the Court makes the following findings of fact:

1.    Qimonda is a German company.  Its business involved the development,

manufacture and sale of semiconductor memory devices.

2.    On January 23, 2009, Qimonda filed an Insolvency Petition with the Munich

Insolvency Court in Germany.  Dr. Michael Jaffé was appointed as the Insolvency

Administrator.[2]

---

[1]   This decision is presently on appeal to the United States Court of Appeals for the Fourth Circuit.  On December
19, 2011, Judge Mitchell of this Court denied the Foreign Representative's Motion for certification of a direct appeal
to the Fourth Circuit pursuant to 28 U.S.C. § 158(d)(2).  *In re Qimonda AG*, 462 B.R. 165 (Bankr. E.D. Va. 2011).
However, on May 7, 2012, the District Court ruled that it would certify the appeal directly to the Fourth Circuit.
*Jaffé v. Samsung Elecs. Co.* (*In re Qimonda AG*), 470 B.R. 374 (E.D. Va. 2012).
[2]   For purposes of this Memorandum Opinion, the terms "Foreign Representative," "Insolvency Administrator" and
"Dr. Jaffé" are used interchangeably.  Similarly, the terms "Debtor" and "Qimonda" (but not Qimonda Licensing)
are used interchangeably.

3.      On June 15, 2009 (the "Petition Date"), Qimonda filed a Chapter 15 Petition with

this Court, seeking recognition of the German insolvency proceeding as the main foreign

proceeding.

4.      On July 22, 2009, the Court entered an Order (the "Recognition Order")

approving the petition.  Docket No. 56.  Pursuant to 11 U.S.C. § 1520, this gave effect to

Sections 361, 362, 363, 549 and 552 of the Bankruptcy Code (11 U.S.C. §§ 361, 362, 363, 549 &

552), with respect to property of the debtor located within the territorial jurisdiction of the United

States.  At the same time, the Court entered a supplemental Order (the "Supplemental

Recognition Order") granting the debtor additional relief pursuant to 11 U.S.C. § 1521, and

implementing Bankruptcy Code Sections 305-307, 342, 345, 349, 350, 364-366, 503, 504, 546,

551 and 558 of the Bankruptcy Code.  Docket No. 57.

<h3 style="text-align:center">The Altis Joint Development Agreements</h3>

5.      In October 2003, Altis and Qimonda's predecessor, Infineon Technologies,

entered into a Joint Development Agreement (the "2003 JDA") for the purpose of jointly

developing "an MRAM product demonstrator based on 7SF and a next generation MRAM

technology, potentially based on 8SF semiconductor technology." *2003 JDA*, Docket 680, Ex.

A, p.2.   This was later amended to the design and development of "an MRAM technology

based on 180nm CMOS and a next generation MRAM technology based on 130nm CMOS or

smaller feature sizes," as well as "the development and validation of a CBRAM technology as

part of the MRAM Project."  Docket 680, Ex. A, amendment, p. 34-35.

6.      With respect to patents, the 2003 JDA provided that any invention, discovery,

design or improvement conceived or reduced to practice (whether solely by one party, or jointly)

"shall be jointly owned by the PARTIES and title to all PATENTS issued thereon shall be jointly owned by the PARTIES, unless otherwise agreed in writing by the Parties." *2003 JDA*, Sec. 7.1.

7.    The 2003 JDA further provided:

> 7.2  <u>Licensing Rights</u>.  INFINEON and its AFFILIATES shall have the right to grant licenses (including the right for any licensee to grant sublicenses) to third parties under any of the PATENTS as per Section 7.1, *or to assign such PATENTS to third parties*, *without compensation to ALTIS* and/or its employees or DELEGATES *and with necessary consent hereby given by ALTIS for the granting of such licenses or for such assignment,* as may be required by the law of any country.  ALTIS shall not have the right to grant licenses or sublicenses to third parties.  (Emphasis added).

8.    The 2003 JDA also contains very specific provisions, and remedies, with respect to confidential information.  *See 2003 JDA*, §§ 5.2 ("Confidential Information"), 5.3 ("Confidentiality, General Exceptions), 5.4 ("Exceptions"), 5.5 ("Disclosure Rights INFINEON"), 5.6 ("Disclosure Rights, ALTIS"), 5.7 ("Minor Portions") & 5.8 ("Restricted Information").

9.    In August 2007, Altis and Qimonda entered into a similar JDA (the "2007 JDA"), for the purpose of jointly developing "MRAM and CBRAM technology, transition metal oxide memory technology and phase change memory technology." *2007 JDA*, Docket 680, Ex. B, p.2. The 2007 JDA contained confidentiality provisions similar to those of the 2003 JDA.  *See 2007 JDA*, §§ 4.2 ("Confidential Information"), 4.3 ("Confidentiality, General Exceptions"), 4.4 ("Exceptions"), 4.5 ("Disclosure Rights QIMONDA"), 4.6 ("Disclosure Rights, ALTIS"), 4.7 ("Minor Portions") & 4.8 ("Restricted Information").

10.    The 2007 JDA contained different provisions relating to the respective rights of the parties in inventions, intellectual property and patents.  Basically:  (a) if the invention pertained uniquely to TMO (a defined term), then Qimonda would own the patent; (b) if one party created the invention, then that party would own the intellectual property rights; and (c) if

4

the invention was jointly created, then ownership of the intellectual property rights would

alternate, based chronologically on the time of the joint inventions.  *See 2007 JDA*, § 6.1.

11.     Section 6.2 of the 2007 JDA provides as follows:

6.2.   Licensing Rights.  QIMONDA, its SUBSIDIARIES and ALTIS and its
SUBSIDIARIES shall have the right to grant licenses under the PATENTS on
INVENTIONS respectively owned as per Section 6.1, *or to assign its ownership in such
PATENTS on INVENTIONS to third parties, without compensation to the other PARTY*
and/or its employees or delegates.  (Emphasis added).

**The Sale of Certain Patents to Adesto**

12.     On March 16, 2009, roughly three months before Qimonda filed its Chapter 15

petition with this Court, Qimonda entered into a Non-Disclosure Agreement with Adesto

Technologies, the purpose of which was to enable the parties to explore the sale of Qimonda's

patents.

13.     On January 13, 2010, the Foreign Administrator filed a Motion to Establish

Procedures for the Sale of Certain Patent Rights (the "Sale Procedures Motion").  Docket No.

202.

14.     The Notice of Hearing contained a thirteen page Service List, and included Altis's

parent corporations, IBM and Infineon.  Docket No. 203.  However, the Notice of Hearing did

not include Altis as a noticed party.

15.     The Foreign Administrator also caused to be published a Notice of his *Motion to

Establish Procedures* in the Wall Street Journal, on January 19, 2010.  Docket No. 210.

16.     The Foreign Administrator's Motion drew a number of objections, including

objections from Altis's parent corporations, Infineon (Docket No. 216) and IBM (Docket No.

214).

5

17.     On March 11, 2010, the Court entered an Order granting the Foreign

Administrator's Motion (the "March 11th Order").  Docket No. 254.  The March 11th Order

provided, in part:

> Any sales of the Patents conducted pursuant to the German Procedures shall not be made
> "free and clear" of any interests under Section 363(f) of the Bankruptcy Code or any
> other rights retained by the Objecting Parties, if any, and shall instead be made expressly
> subject to such interests and/or rights.  Any rights in the Patents held by the Objecting
> Parties shall continue to exist as set forth under applicable law and may be prosecuted in
> any court or tribunal of competent jurisdiction.

*Id.* at ¶ 2(a).

18.     Notably, under the terms of the March 11th Order, the "Objecting Parties"

included IBM and Infineon, but did not include Altis.

19.     The Foreign Representative filed a Notice of Intent to Sell a number of patents to

Adesto Technologies Corporation, Inc., on June 28, 2010, for the purchase price of $500,000.

Docket No. 268; *see also* Amended Notice of Intent to Sell, Docket No. 275.

20.     On October 12, 2010, the Foreign Representative filed a Quarterly Report of Sale,

confirming the sale of the patents to Adesto.  Docket No. 337.

**The Altis Lawsuit**

21.     On June 21, 2012, Altis filed a Complaint in the U.S. District Court for the

Northern District of California against Qimonda, Qimonda Licensing, LLC, and Qimonda North

America Corp.[3]  *Altis Complaint CV12-03227*, Docket No. 677, Ex. 2.

22.     The Summary of the Case states: "This case is about the wrongful licensing of the

jointly held intellectual property of the joint venture between Altis and Qimonda AG to the

commercial detriment of Altis' cutting edge research and development ventures."  *Altis*

---

[3]   Qimonda North America, or QNA, is the subject of a Chapter 11 proceeding in Delaware.  No relief is sought in
this Court with respect to QNA.  *Qimonda Motion*, Docket No. 673, at n.1.

*Complaint CV12-03227*, p.2, ¶ 3.  The gravamen of the Complaint is that Qimonda "has sold, licensed or transferred the parties' valuable joint assets to third parties that Altis was already engaged in joint venture development with, in breach of the fiduciary duties owed to Altis as a former joint venture partner." *Id.* at ¶ 5.[4]

23.    Altis refers to, and relies upon, Qimonda's fiduciary duties arising out of the JDAs, throughout the Complaint.  *Id.* at ¶¶ 31 ("Defendants failed to protect confidential information owned by Altis *as required by the JDAs* with Altis and violated the fiduciary duties owed to Altis as a former joint venture partner"); 37 (Defendants' actions "constitute a breach of the fiduciary duty Qimonda AG and/or QNA owed to Altis *under the JDAs*"); 44 ("Defendants have breached the fiduciary duty Qimonda AG owed to Altis as a joint venture partner"); 55 ("in violation of a fiduciary duty owing to Altis *arising from the 2003 JDA*") (emphasis added).

24.    The Prayer for Relief in the Complaint requests the following relief:

1.    Defendants be enjoined from disclosing any Altis Know-How and/or Altis confidential information to any third party through their licensing programs;

2.    Defendants be enjoined from selling or licensing any intellectual property co-owned with Altis through joint development relationship to the detriment of Altis;

3.    A judgment declaring Defendants' sale of Qimonda AG's co-ownership of the Patents at Issue to Adesto void;

4.    The Court award restitution, costs, and injunctive relief to Altis as a result of injury due to Defendants' violations of California's Unfair Competition Law, Bus. & Prof. Code, § 17200 *et seq.*, in amounts to be ascertained at trial;

5.    A judgment be entered against Defendants for Altis' actual damages according to proof, and for any profits attributable to Defendants' wrongful actions; and

6.    Awarding Altis all such other, and further relief as the Court deems just and proper.

---

[4]  For reasons unknown to the Court, Altis has chosen not to include Adesto as a party in this lawsuit.

*Altis Complaint CV12-03227*, pp. 19-20.

25.     On September 12, 2012, the Foreign Representative filed his Motion in this Court

to enforce the automatic stay and for related relief.  *Qimonda Motion*, Docket No. 673.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of

Reference of the U.S. District Court for this District of August 15, 1984.  This is a core

proceeding, within the meaning of 28 U.S.C. § 157(b)(2)(A) (matters concerning the

administration of the estate), (G) (motions to terminate, annul, or modify the automatic stay),

(M) (orders approving the use or lease of property) and (N) (orders approving the sale of

property).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

While ordinarily, a request for injunctive relief requires the filing of an adversary

proceeding, this Motion involves the application of the automatic stay (and related provisions

under 11 U.S.C. §§ 1520 and 1521).  Accordingly, no adversary proceeding is required. *In re*

*Hookup, L.L.C.,* 2012 WL 4904538 (Bankr. E.D. Va. 2012); *In re Fas Mart Convenience Stores,*

*Inc.,* 318 B.R. 370 (Bankr. E.D. Va. 2004).

**I.     The Automatic Stay Applies to Altis's Allegations of Pre-Petition Breach.**

**A.  Sections 1520(a)(1) and 362(a)(1).**

Section 1520(a)(1) of the Bankruptcy Code provides that, upon recognition of a foreign

main proceeding: "sections 361 and 362 apply with respect to the debtor and the property of the

debtor that is within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(1).

Upon recognition of a foreign main proceeding, an estate is not created, as Section 541 of

the Bankruptcy Code is not among the enumerated Sections of the Bankruptcy Code that become

operative upon recognition under Section 1520.  However, upon recognition, the automatic stay

applies to property of the debtor that is within the territorial jurisdiction of the United States.  *See*

*In re JSC BTA Bank*, 434 B.R. 334, 337 (Bankr. S.D. N.Y. 2010) ("[T]he Court concludes that

the automatic stay does not afford broad anti-suit injunctive relief to the debtor entity outside the

territorial jurisdiction of the United States upon entry of an order of recognition in a chapter 15

case.")  The absence of the creation of an estate results in certain Sections of the Code not being

applicable, by their use of the term "estate."  For example, literally read, Section 362(a)(3)

(prohibiting any act to obtain possession of property of the estate or to exercise control over

property of the estate) and Section 362(a)(4) (prohibiting any act to create, perfect or enforce a

lien against property of the estate), would not apply.  Fortunately, Sections 1521(a)(1) and (2) are

available to fill in the gaps.

> Bankruptcy Code Section 362(a)(1) bars:
>
> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

11 U.S.C. § 362(a)(1).

> The Fourth Circuit has noted:
>
> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from its creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) (quoting H.R. Rep. No. 95-595, at

340-41 (1977); S. Rep. No. 95-989, at 54-55 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5840 &

6296-97).  Congress intended that the definition of "claim" in the Code be as broad as possible.

*Id*.

9

The automatic stay does not, however, apply to purely post-petition torts.  *Grady*, 839

F.2d at 201-02 (adopting the conduct test for when a contingent tort claim arises).  Similarly, the

automatic stay does not apply to post-petition breaches of contract.  *In re Bellini Imports, Ltd*.,

944 F.2d 199 (4th Cir. 1991).  Even with respect to post-petition breaches of contract, though,

the stay contained in Sections 362(a)(3) and (4) operates to prevent "any act to obtain possession

of property of the estate," and "any act to create, perfect, or enforce any lien against property of

the estate," respectively.  11 U.S.C. §§ 362(a)(3)-(4).  Thus, even post-petition creditors "must

obtain relief from the stay to satisfy a judgment against property of the bankruptcy estate."

*Bellini Imports*, 944 F.2d at 201.

There is one further refinement to the foregoing.  Where a pre-petition contract has been

rejected by the debtor, creditors are barred by the automatic stay from bringing actions against

the debtor that are rooted in those contracts.  This is because, when a contract is rejected, the

creditor will have a rejection claim against the estate under Section 365(g) "*immediately before*

*the date of the filing of the petition*."  11 U.S.C. § 365(g)(1) (emphasis added).  This provision

makes it clear that the rejection of an executory contract gives rise to a pre-petition, and not a

post-petition, claim.

Two cases illustrate this point.  First, in *In re Old Carco LLC (f/k/a Chrysler*, LLC),

Chrysler rejected a number of dealership contracts, as executory contracts under Section 365 of

the Code.  424 B.R. 633 (Bankr. S.D. N.Y. 2010).  The dealers asserted administrative expense

priority claims for damages sustained as a result of the rejection, based on Dealer Laws within

each of their respective States.  *Id.* at 637.  The dealers further argued that the Debtor was

obligated to respect these Dealer Laws pursuant to 28 U.S.C. § 959(b), and that the Debtor's

breach of the Dealer Laws gave rise to a post-petition, administrative claim.  *Id.*  The Court

rejected the argument, noting:

> Where a claim is based upon an obligation that stems from a rejected pre-petition
> contract, encumbering a debtor with a "post-petition obligation would seriously undercut
> the entire purpose of the rejection process."  Requiring administrative priority for
> "obligations that were first undertaken pre-petition is exactly what the rejection
> provisions are supposed to avoid."

*Id*. at 639-40 (quoting *In re Ames Dep't Stores, Inc.,* 306 B.R. 43, 60 (Bankr. S.D. N.Y. 2004)).[5]

In the second case, *In re Great Atlantic & Pacific Tea Co.,* the Debtor rejected a trucking

contract with Grocery Haulers, Inc.  467 B.R. 44, 48 (S.D. N.Y. 2012).  This caused Grocery

Haulers to have to lay off hundreds of employees without providing them with the required 60

days' notice under the federal WARN Act and the applicable New Jersey statute.  *Id.*  The union

sued Grocery Haulers.  *Id.*  Grocery Haulers filed a third-party complaint against the Debtor,

alleging that A&P was responsible for post-petition breaches of the WARN Act and the New

Jersey statute, as well as for a tortious interference claim.  *Id.* at 49.  The Bankruptcy Court held

that Grocery Haulers' claims arose out of the rejection of its pre-petition contract with the

Debtor, and that it was entitled to a pre-petition claim under Section 365(g), and enjoined

Grocery Haulers from proceeding on its third party complaint against A&P.  *Id.* at 49-50.  The

District Court affirmed.  *Id.* at 59.  The Court noted:

> Appellant has not cited a case relating to a debtor's rejection of an executory contract —
> and the Court is aware of none — that holds that statutory and tort liability for damages
> flowing from a rejected executory contract may be treated as arising post-petition. . . . As
> Judge Drain found, however, the same theory does not hold here because the post-
> petition conduct was the rejection of the contract, which did happen in bankruptcy and by

---

[5]   The dealers have since taken up the fight in the Court of Federal Claims, asserting that the rejection of their dealer
contracts constituted a taking by the government without just compensation.  The Court has denied the government's
motion to dismiss asserting that the bankruptcy court rulings were *res judicata* of the takings claims.  *Colonial
Chevrolet Co., Inc. v. U.S.*, 103 Fed. Cl. 570 (Fed. Cl. 2012), *certified in part for interlocutory appeal*, __ Fed.Cl.
__, 2012 WL 3590526 (Fed. Cl. 2012).

legal fiction is treated as having occurred pre-petition.  *See* Hr'g Tr. 159:8–160:10; [*Fed. Realty Inv. Trust v. Park (In re Park*), 275 B.R. 253, 256 (Bankr. E.D. Va. 2002)]. Accordingly, the Bankruptcy Court did not err in finding that the claims regarding the WARN Acts violations arose pre-petition and are stayed under Section 362.

467 B.R., at 52; *see also Realty Inv. Trust v. Park (In re Park), 275 B.R. 253, 256 (Bankr. E.D. Va. 2002)* ("rejection simply constitutes a *breach* of the lease or contract.  [11 U.S.C. § 365(g)]. Even though the act of rejection takes place after the date of the bankruptcy filing, the breach (with certain exceptions) is treated as occurring on the date of the bankruptcy filing. *Id*. As a result, any claim for damages flowing from the breach is treated as a prepetition claim.")

In this case, the record is not sufficient to determine whether the alleged breaches of fiduciary duty occurred entirely pre-petition, entirely post-petition, or (as is more likely) a combination of pre-petition and post-petition.  Altis's Complaint alleges that "in or about the summer and fall of 2010, Defendants actively solicited Adesto to purchase and/or license certain CBRAM-related intellectual property co-owned by Altis and Qimonda."  *Altis Opposition*, Docket No. 677 at ¶ 30.  The Qimonda-Adesto Non-Disclosure Agreement is dated as of March 16, 2009, roughly three months before Qimonda filed its Chapter 15 petition with this Court, so it is likely that many of the alleged disclosures occurred pre-petition.

The Order of Recognition (Docket No. 56) caused the automatic stay to be in effect.  11 U.S.C. § 1520(a)(1).  The Supplemental Order (Docket No. 57) gave effect to Section 365 of the Code.  The Altis JDAs have all been rejected as a matter of German insolvency law, pursuant to Section 103 of the German Insolvency Code.  Like the dealer claims for administrative expenses in *Old Carco*, and like the WARN Act and tortious interference claims in *A&P*, Altis's claims for pre-petition breaches of the JDAs, and/or pre-petition breaches of fiduciary duty, unquestionably stem from, and necessarily depend upon, the fiduciary duties arising from the

12

pre-petition JDAs.  Indeed, without the now-rejected JDAs, Altis would have no claims in the

California lawsuit at all.  Rather than allege that Qimonda breached the confidentiality terms of

the JDAs, Altis alleges that Qimonda breached its fiduciary duties as a joint venture partner by

disclosing confidential information.  But, at least as to the alleged pre-petition disclosures, this is

just a thinly veiled attempt to plead one's way around the automatic stay and the fact that the

JDA's have been rejected under German law.

Altis argues that it can't possibly be in violation of the stay, when it had no notice of the

Sale Procedures Motion and the March 11th Order.  Altis, however, unquestionably had notice of

this bankruptcy case when it filed its lawsuit against the Debtor.  In effect, Altis is seeking to

parlay its lack of notice in connection with the March 11th Order into a "get out of bankruptcy

free" card.  The lack of notice to Altis cannot allow it to ignore the jurisdiction of this Court

altogether.

It is clear that Altis has sued the Debtor based on pre-petition contractual obligations that

have now been rejected by the Foreign Administrator.  The Court finds that the Altis lawsuit,

insofar as it requests damages for pre-petition breaches of the JDAs, or for pre-petition breaches

of fiduciary duty,  is a violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(1), and the

Court will enjoin the prosecution of the lawsuit with respect to such allegations.

To the extent that the automatic stay of Section 362 may not apply, the Court will stay the

commencement of the action pursuant to 11 U.S.C. § 1521(a)(1), which allows the Court to stay

"the commencement or continuation of an individual action or proceeding concerning the

debtor's assets, rights, obligations or liabilities to the extent that they have not been stayed under

Section 1520(a)," as to any allegation of pre-petition breaches of the JDA's or breaches of

confidentiality.

13

**B.  The Terms of the March 11th Sale Order Do Not Remove the Protections of the Automatic Stay.**

Altis argues further that "[t]he March 11 Sale Order does not cut off rights; rather, it preserves them." *Altis Opposition* at p.8.  As noted, the March 11th Order does not provide that the sale is free and clear of all liens, claims and interests; to the contrary, it provides that the sale is not a sale free and clear under Section 363(f).  Further, with respect to the Objecting Parties, the Order provides that "[a]ny rights in the Patents held by the Objecting Parties shall continue to exist as set forth under applicable law and may be prosecuted in any court or tribunal of competent jurisdiction." *March 11 Sale Order*, Docket No. 254, p.2.  Altis is not identified as an Objecting Party in the Order.  Altis argues that it is not identified as an Objecting Party because it never had notice of the Sale Procedures Motion, nor the entry of the March 11th Order.  Altis further argues that, owing to the lack of notice it should be treated as an Objecting Party.

Altis's position is not without some surface appeal.  The Court accepts for purposes of this Motion that Altis did not have notice of the entry of the March 11th Order.  The Court also accepts for purposes of this Motion that Altis may have had a property interest to protect.  However, the Court declines to make the leap suggested by Altis that, for these reasons, it should be treated as an Objecting Party under the March 11th Order.  Altis's position, as a co-owner of the patents pursuant to the JDAs, is just fundamentally different from that of the Objecting Parties, who for the most part were licensees protecting their rights as such.  The Objecting Parties negotiated language in the March 11th Order with which they were satisfied.  This language protected their interests.  The Court declines to speculate as to whether Judge Mitchell, in entering the March 11th Order, would have granted the same protections to Altis that he provided to the Objecting Parties.  The most that can be said about the March 11th Order in this

14

regard is that it did not deal with the rights of co-owners of the patents being sold.  It certainly did not address Altis's rights.

## II.    Altis's Request that the Sale to Adesto be Declared "Void" is an Impermissible Collateral Attack on this Court's March 11th Sale Order.

Paragraph 3 of Altis's Prayer for Relief requests: "[a] judgment declaring Defendants' sale of Qimonda AG's co-ownership of the Patents at Issue to Adesto void."  *Altis Complaint CV12-03227*, p. 19.  This is an impermissible collateral attack on this Court's March 11th Order. *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1256 (4th Cir. 1997) ("Under the holding of [*Celotex Corp. v. Edwards*, 514 U.S. 300, 305-07 (1995)], Spartan Mills cannot allow a final order that deprives it of a lien position to stand and then hope to attack it collaterally at another time and in another forum"); *FutureSource LLC v. Reuters Ltd.*  312 F.3d 281, 286 (7th Cir. 2002), *cert. denied*  538 U.S. 962 (2003) ("the order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed. R. Civ. P. 60(b) imposes on collateral attacks on civil judgments").

In *Spartan Mills*, the creditor had actual notice of the sale, and in this case, Altis claims that it did not.  In *Spartan Mills,* though, the creditor complained of a different kind of due process violation, the lack of an adversary proceeding to avoid its lien.  In either event, the principle is the same: the creditor cannot be permitted to mount a collateral attack on a final sale order, especially where, it has alternative remedies available to it.[6]

---

[6]  The conclusion that Altis's lawsuit represents an impermissible collateral attack on the Sale Order is reinforced by Altis's argument that "[t]he sale of the Patents at Issue was the critical act of the Debtor and its affiliates that harmed Altis.  Indeed, had the Administrator not consummated the sale of the Patents at Issue to Adesto, per the terms of the Non-Disclosure Agreement between QAG and Adesto attached to the Motion, Altis would not have been harmed." *Altis Opposition*, at 11.

This does not mean that Altis is without a remedy.  Altis can move in this Court to vacate the March 11th Order, pursuant to Bankruptcy Rule 9024, which incorporates Federal Rule of Civil Procedure 60(b).

A number of courts have noted that, "[b]y far the most frequent mistake or infirmity held to warrant vacating a confirmed sale is defective notice to interested parties of the judicial sale." *In re Chung King*, 753 F.2d 547, 551 (7th Cir. 1985); *In re Compak Cos.,* 415 B.R. 334, 341 (N.D. Ill. 2009); *see also In re Taneja*, 2011 WL 1045286 (Bankr. E.D. Va. 2011) ("That the trustee's failure to provide Specialized with notice of the proposed sale constitutes a serious procedural error is clear.")

A Rule 9024 Motion, and the kind of relief that might be granted, could potentially turn on three questions.  The first is whether Altis had actual notice of the Sale Procedures Motion and/or the March 11th Order.  Clearly, Altis's parent corporations, IBM and Infineon were on notice of the Sale Procedures Motion.  They objected, and were identified as Objecting Parties in the Order.  When asked at the argument on this Motion whether perhaps IBM or Infineon had forwarded this notice on to Altis, counsel for Altis stated that so far, there was no indication that Altis had received such notice.  The Court accepts this representation, and appreciates counsel's candor.  However, whether or not Altis received actual notice could be the subject of discovery, and may be a disputed issue in connection with a Rule 9024 Motion.

Second, a Rule 9024 Motion will depend on the nature and extent of Altis's rights in the property.  *See In re Taneja*, 2011 WL 1045286 ("A determination that U.S. Bank's due process rights were infringed when it was not given notice of the proposed sale does not, however, require that the sale itself be set aside.  As noted, even if U.S. Bank had been given notice and had objected, the court could – and likely would – have approved a sale free and clear of U.S.

16

Bank's disputed lien.")  The Foreign Administrator maintains that Altis has already consented to

the sale, and that no compensation is due to Altis, pursuant to Section 7.2 of the 2003 JDA.  *See*

*supra* Finding of Fact ¶ 7.  The record is insufficient at this time for the Court to conclude that

Altis had already consented to the sale.  Clearly, though, Altis's rights in the property, if any,

will have to be determined in connection with a Rule 9024 Motion.

Third, a Rule 9024 Motion could raise the question of whether or not Adesto is a good

faith purchaser entitled to the protections of Section 363(m).  The March 11th Order did not

make a finding that Adesto was a good faith purchaser.  This remains an open issue that would

be relevant in fashioning relief, if any, on a Rule 9024 Motion.  It is possible that, if Adesto is

found to be a good faith purchaser, the Court could fashion a remedy that would allocate a

portion of the sale proceeds to Altis commensurate with its rights, if any, under applicable non-

bankruptcy law in the patents, while not disturbing Adesto's status as a good faith purchaser if

Adesto is found to occupy that position.  *In re Compak Cos*., 415 B.R. at 344 ("Given the

procedural posture of this case, and the 'strong policy of finality of bankruptcy sales,' we believe

that a narrow remedy is appropriate.").  All of these issues can be determined in connection with

a Rule 9024 Motion.

Even assuming that Altis did not have notice of the entry of the March 11th Order, Altis's

remedy lies in Rule 9024, not in bringing its lawsuit in California against the Debtor.  The Court

will enjoin Altis's from proceeding with its request in the lawsuit that the District Court declare

the sale to Adesto void.

### III.    Altis is Improperly Seeking to Exercise Control Over Property of the Debtor.

Paragraph 2 of Altis's Prayer for relief requests that the "Defendants be enjoined from

selling or licensing any intellectual property co-owned with Altis through [the parties'] joint

17

development relationship to the detriment of Altis." *Altis Complaint CV12-03227*, p. 19. This is

plainly an attempt to exercise control over the Debtor's property located within the United

States.

The Court continues to have jurisdiction over the U.S. patents. The parties agree that

there are patents that are not the subject of the March 11th Sale Order that are still owned by the

Debtor, and in which Altis may have an interest pursuant to the JDAs.

Altis's lawsuit, in seeking to enjoin further sales, is an act to exercise control over

property of the debtor located within the United States. This act violates Section 362(a)(3) of the

Bankruptcy Code. Alternatively, to the extent that Section 362(a)(3) may not apply (again,

because no estate is created), the Court will enjoin this portion of Altis's lawsuit pursuant to 11

U.S.C. § 1521(a)(1).

### IV.     The Court Will Decline to Extend the Stay to Protect Qimonda Licensing.

It is clear that, absent unusual circumstances, the automatic stay does not protect

Qimonda Licensing, a non-debtor subsidiary of Qimonda. *Kreisler v. Goldberg,* 478 F.3d 209

(4th Cir. 2007); *A.H. Robins Co.*, 788 F.2d at 1016. The Foreign Administrator asserts two

alternative bases for relief: (1) injunctive relief pursuant to 11 U.S.C. §§ 1521(a) and 105(a); and

(2) the *Barton* doctrine. Neither basis compels the grant of this unusual relief in this case.

### A.  The Foreign Administrator's Request for Injunctive Relief.

The Foreign Administrator requests that the Court extend the automatic stay to Qimonda

Licensing pursuant to 11 U.S.C. §§ 1521(a) and 105(a). Section 1521(a) provides as follows:

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to
> effectuate the purpose of this chapter and to protect the assets of the debtor or the
> interests of the creditors, the court may, at the request of the foreign representative, grant
> any appropriate relief, including—

18

(1) staying the commencement or continuation of an individual action or proceeding
concerning the debtor's assets, rights, obligations or liabilities to the extent they have
not been stayed under section 1520(a);

11 U.S.C. § 1521(a).

Section 105(a) of the Code provides as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to
carry out the provisions of this title. No provision of this title providing for the raising of
an issue by a party in interest shall be construed to preclude the court from, sua sponte,
taking any action or making any determination necessary or appropriate to enforce or
implement court orders or rules, or to prevent an abuse of process.

 11 U.S.C. § 105(a).

The Foreign Administrator argues that the Court should consider the request to stay the

action as against Qimonda Licensing under the traditional four-part test for injunctions.  The

Court agrees that the standard for granting a preliminary injunction is applicable here.  *CT Inv.*

*Mgmt. Co. v. Carbonell,* 2012 WL 92359 (S.D. N.Y. 2012); *In re Vitro, S.A.B. de C.V.*, 455 B.R.

571, 580-83 (Bankr. N.D. Tex. 2011); *In re Calpine Corp*., 365 B.R. 401, 408 (S.D.N.Y. 2007)

(in a Chapter 11 case, "the automatic stay can apply to non-debtors, but normally does so only

when a claim against the non-debtor will have an immediate adverse economic consequence for

the debtor's estate") (citations omitted).[7]

The factors to be employed in this test are not entirely clear, however.  The Foreign

Administrator cites *A.H. Robins*, 788 F.2d at 1016, for the four factors to be considered in

granting or denying a preliminary injunction.  *Qimonda Motion*, p. 12.  The Fourth Circuit in

*A.H. Robins*, in turn, relied upon the *Blackwelder* factors.  *Blackwelder Furniture Co. of*

*Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir.1977).  However, since the *Robins*

---

[7]  The Court recognizes the tension between *Carbonell*, which extended the protection of the automatic stay to a
foreign, non-debtor subsidiary, and *Vitro*, which did not (both cases involved Mexican debtors and their
subsidiaries).

decision, the *Blackwelder* factors have been replaced with the factors identified in *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008).  *See Real Truth About Obama, Inc. v. Fed. Election Com'n,* 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds* 130 S. Ct. 2371 (2010) ("Our *Blackwelder* standard in several respects now stands in fatal tension with the Supreme Court's 2008 decision in *Winter.*")

The *Winter* factors are stated as follows: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  555 U.S. at 374.  The Court will employ the *Winter* factors in its determination of whether to extend the automatic stay to the non-debtor subsidiary, Qimonda Licensing pursuant to Sections 1521 and 105 of the Code.

1.  *Likelihood of Success on the Merits.*

Addressing the first factor, a likelihood of success on the merits, the Court finds that Qimonda Licensing has a good chance of success on the merits in defending the California litigation.  Qimonda Licensing was not a party to the JDAs and does not appear to have owed any duties, fiduciary or contractual, to Altis.  Oddly, though, this factor weighs against Qimonda Licensing because, as stated below, the ability to defend the lawsuit on the merits represents an adequate remedy at law.

2.  *Irreparable Harm.*

With respect to the second factor, that of irreparable harm, the Court finds that the Foreign Administrator has not demonstrated irreparable harm.  The likelihood of irreparable harm turns on whether or not the Foreign Administrator has adequate remedies at law.  *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959) ("The basis of injunctive relief in the federal

20

courts has always been irreparable harm and inadequacy of legal remedies"); *Tattoo Art, Inc. v. TAT Intern., LLC,* 794 F. Supp. 2d 634 (E.D. Va. 2011) ("The inquiry for irreparable harm 'inevitably overlaps with' the inquiry as to the adequacy of legal remedies" (citing *MercExchange, L.L.C. v. eBay, Inc.,* 500 F. Supp. 2d 556, 582 (E.D. Va. 2007)). At this point, the Foreign Administrator has two available legal remedies with respect to Qimonda Licensing. First, he can defend the lawsuit on the merits. It isn't clear to the Court why Qimonda Licensing is included in the lawsuit in the first place. Clearly, Qimonda Licensing didn't enter into a Joint Development Agreement with Altis, and does not appear to owe Altis any fiduciary duties. The Complaint does not distinguish among the Defendants, in terms of their legal duties to Altis, nor with respect to their individual culpabilities. Perhaps, under applicable non-bankruptcy law, Altis can cobble together a theory that Qimonda Licensing conspired with Qimonda to deprive Altis of its rights, but this might run into intra-corporate conspiracy problems. *See Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752 (1984) (parent and subsidiary incapable of conspiring with one another for purposes of Section 1 of the Sherman Act, because of complete unity of interest); *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46 (Cal. App. 2d Dist. 2010) (applying *Copperweld* intracorporate immunity to claims under California Unfair Competition Act).

The Court recognizes that the defense of the lawsuit will not be without a required expenditure of substantial legal fees on behalf of the Foreign Administrator – which brings us to the second legal remedy. If the Foreign Administrator decides that the costs of defending the lawsuit on behalf of Qimonda Licensing are not justifiable, he can file a Chapter 11 or a Chapter 7 petition for Qimonda Licensing here in the United States. Unquestionably, all of the acts

alleged in the lawsuit would pre-date such a filing, and would be subject to the automatic stay in

a Qimonda Licensing bankruptcy filing.

    *3.   Balancing the Equities.*

    Addressing the third factor, the balance of the equities, on the one hand, the Foreign

Administrator failed to give Altis notice of the Sale Procedures Motion, which has in large part

created the problem.  Further, Dr. Jaffé created Qimonda Licensing as a U.S. subsidiary of

Qimonda.  He might have expected that, sooner or later, Qimonda Licensing could be sued in the

United States and would not have the protection of the automatic stay.  At the same time, as

noted above, Altis has attempted to use the lack of notice of the Sale Procedures Motion to its

advantage, in effect, ignoring the jurisdiction of this Court over the assets of the Debtor, despite

its actual knowledge of the bankruptcy case at the time that it filed the lawsuit.  This factor

favors neither party.

    *4.   The Public Interest.*

    With regard to the fourth factor, whether the injunction is in the public interest, the Court

finds that this factor heavily favors Altis.  Specifically, the Court agrees with the decision in *In*

*re Vitro, SAB,* in which the bankruptcy court held that extending the automatic stay to non-debtor

subsidiaries would be contrary to basic U.S. bankruptcy law.  455 B.R. at 581.[8]  In *Vitro*, the

Court refused to recognize the Judgment of the Mexican courts approving a *Consurso*, or plan of

reorganization, that not only reorganized the Debtor's financial affairs, but also extended

protection from creditors to the Debtor's non-debtor subsidiaries.  *Id.* at 581-82.  The *Vitro* Court

held as follows:

_____

[8]   The *Vitro* case is currently on direct appeal to the Fifth Circuit. *In re Vitro, SAB, DE C.V,* 2012 WL 2367161
(Bankr. N.D. Tex. 2012).

Finally, the granting of an injunction will disserve the public interest. Extending the automatic stay or issuing an injunction for non-debtors contravenes a basic and compelling principle of federal bankruptcy law.  Like the rest of the Code, Chapter 15 focuses on protecting the debtors, not the non-debtor subsidiaries.  If granted, precedent will be set that any foreign debtor can initiate insolvency proceedings solely for a parent holding company in a foreign jurisdiction, get an injunction protecting non-debtor subsidiaries in the United States, and confirm a plan through insider votes leaving creditors in the United States with little recourse.

*Id*.  As in *Vitro*, the Foreign Administrator here is seeking to accomplish something in Chapter 15 that U.S. bankruptcy law ordinarily would not allow absent unusual circumstances. Specifically, the Foreign Administrator is seeking a stay against a non-debtor entity.  The *Vitro* case involved the foreign court's protection of foreign, non-debtor subsidiaries.  In this case, we have a U.S. non-debtor subsidiary.  However, the principal is the same – the Court in *Vitro* refused to recognize the foreign court's Order *because* such a result ordinarily would not be allowed under U.S. law.  *Id.*; *see also In re Sivec SRL*, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012) (noting that under 11 U.S.C. § 1522(a), the Court may grant relief under Section 1521 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected").  Under U.S. law, any such stay should only be granted under unusual circumstances and for compelling reasons.  In this case, the Foreign Administrator has failed to overcome the fundamental principal that the automatic stay does not apply to a non-debtor.

The public policy at issue here weighs heavily in favor of Altis, and against the Foreign Administrator's position with respect to Qimonda Leasing.

## B.  The Barton Doctrine does not Apply.

The Foreign Administrator requests in the alternative that the Court stay the action against Qimonda Licensing in light of the *Barton* doctrine.  *Barton*, 104 U.S. 126; *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012); *In re Vistacare Grp, LLC*, 678 F.3d 218 (3d Cir. 2012).  The *Barton* doctrine does not provide a general, or even a qualified, immunity to the Foreign

23

Representative.  Rather, it is the necessary product of the Court's supervision of its professionals.

*McDaniel*, 668 F.3d at 157.  In effect, the Court serves as a gatekeeper under the *Barton*

doctrine, protecting its appointed professionals from frivolous lawsuits that would interfere with

the administration of the estate.  *In re Cutright*, 2012 WL 1945703 (Bankr. E.D. Va. 2012) ("The

*prima facie* case requirement requires a 'pre-screening' of the allegations by the appointing court

to determine if the plaintiff can present adequate grounds upon which to proceed against the

trustee in another forum.")

In this case, Dr. Jaffé is the Court-supervised administrator of Qimonda, not of Qimonda

Licensing.  Qimonda Licensing is a U.S. corporation and is not in bankruptcy.  Accepting the

Foreign Administrator's argument that it makes no difference whether the Foreign Administrator

was appointed initially by the German Court or by this Court (once a U.S. court has recognized

the foreign main proceeding), it is still true that Dr. Jaffé was appointed by that Court with

respect to Qimonda, and not with respect to Qimonda Licensing, which, as noted, is a U.S.

corporation.  Further, the Court sees no harm to the notion of comity between the German Court

and the U.S. courts in refusing to extend the automatic stay to a U.S., non-debtor subsidiary.  The

German Court's interest in supervising the affairs of Qimonda Licensing is, like Dr. Jaffé's

interest in Qimonda Licensing, indirect.  The Foreign Administrator cites no case (whether under

Chapter 7, Chapter 11 or Chapter 15) in which a court has interposed the *Barton* doctrine to

prevent a lawsuit against a related company that is not under the jurisdiction of the reviewing

court.  The Court concludes that the *Barton* doctrine is not implicated with respect to Dr. Jaffé's

indirect interest in Qimonda Licensing.  Moreover, for the reasons discussed above - particularly,

the legal remedies currently available to Qimonda Licensing—the Court in its discretion declines

to stay Altis's lawsuit against Qimonda Licensing.

24

The Court concludes that the *Barton* doctrine is not implicated by Altis's lawsuit against Qimonda Licensing.

### V.      Altis's Motion for Relief from the Automatic Stay.

Altis requests in the alternative that it be granted relief from the automatic stay to proceed with its lawsuit against Qimonda.  The Court will deny Altis's Motion as to any alleged pre-petition breaches.  However, it will grant the Motion as to the establishment of liability and the fixing of any damages for post-petition breaches, but not for the collection of any judgment against assets of the debtor located within the territorial jurisdiction of the United States.

### A.  Alleged Pre-Petition Breaches.

With respect to any alleged pre-petition breaches of the JDAs, or alleged breaches of fiduciary duty, Section 362(d)(1) allows the Bankruptcy Court to lift the automatic stay for cause.  The term "cause," however, is not defined.  In the Fourth Circuit, the following factors are to be taken into account:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins v. Robbins (In re Robbins),* 964 F.2d 342, 345 (4th Cir. 1992).  *See also In re Lee,* 461 F. App'x 227, 231 (4th Cir. 2012) (applying the *Robbins* factors).

In this case, there is no compelling reason to grant relief from the stay to allow Altis to proceed with its litigation in California as to the alleged pre-petition breaches.  The issues in the lawsuit involve both bankruptcy and non-bankruptcy law—the latter being primarily the duties that Qimonda may have had as a joint venturer, under the JDAs; the former, being the effect, if any, of the March 11th Sale Order, and whether effective relief can be granted to Altis at this

point.  This Court can decide both the bankruptcy and non-bankruptcy issues in connection with

the determination of Altis's rejection claim.

With respect to the second factor, the Court does not see any judicial economy in lifting

the automatic stay.  Further, if the litigation were allowed to proceed, the Court sees a very real

possibility of interference with the administration of this bankruptcy case.

Most importantly, Altis has not even proffered any method by which the assets of the

Debtor within the United States can be protected.  Even if Altis were to obtain a judgment

against the Debtor, collection would be stayed as to assets of the Debtor within the United States,

under Section 1521(a)(2)).  *See also Bellini Imports*, 944 F.2d at 201 (applying the same principle

under 11 U.S.C. § 362(a)(3) and (4)).  Altis has not met its burden of showing how the assets of

the Debtor within the United States would be protected if the litigation were allowed to proceed.

Altis's Motion for Relief from the Automatic Stay will be denied as to any pre-petition breaches

of the JDAs or alleged pre-petition breaches of fiduciary duty.[9]

**B.  Post-Petition Breaches.**

Finally, Altis's Complaint alleges post-petition breaches of the JDAs and/or post-petition

breaches of Qimonda's fiduciary duties as a joint venturer.  Rejection of an executory contract

gives rise to a claim for a breach, which as noted, is effective as of the petition date.  Just

because a contract is rejected, however, does not give the debtor license to engage in post-

petition breaches of the contract, nor as in this case, alleged breaches of fiduciary duties, to the

detriment of its counter-party.  *See Sunbeam Prods., Inc. v. Chi. Am. Mfg., LLC*, 686 F.3d 372,

377 (7th Cir. 2012) (Upon rejection, "[t]he debtor's unfulfilled obligations are converted to

---

[9]  To be clear, this denial of Altis's Motion for Relief from the Automatic Stay as to pre-petition breaches includes
the denial of Altis's Motion, and the continuation of the stay, as to any allegation that Altis was *harmed* post-petition
as a result of a pre-petition breach.  *See Grady*, 839 F.2d  at 203 (adopting the conduct test, for contingent claims).

damages; when a debtor does not assume the contract before rejecting it, these damages are

treated as a pre-petition obligation, which may be written down in common with other debts of

the same class. But nothing about this process implies that any rights of the other contracting

party have been vaporized");[10] *In re Phillips*, 2010 WL 3041968 (W.D. Wash. 2010) ("Rejection

frees the estate from the obligation to perform (in this case, to pay insurance premiums), but it

does not nullify, invalidate, cancel, or rescind the contract, and it does not eliminate any claims

or defenses that the debtor had with regard to the contract."); *In re Prentice*, 2012 WL 1801711

(Bankr. E.D. Mich. 2012) ("rejection did not (contrary to Debtor's position) perforce render [a]

non-complete clause void or unenforceable"); *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481

(Bankr. C.D. Cal. 2012) ("Beyond creating a breach and yielding a claim against the estate,

rejection does *not* substantively affect the contract—it is not terminated, vaporized, or otherwise

cancelled.")  In the unusual circumstances of this case, where the non-debtor counterparty is

alleging post-petition breaches of the duties arising out of the JDAs, which according to Altis's

allegations are resulting in continuing harm, the rejection of the JDAs does not cut off Altis's

rights entirely.

The Court will grant Altis's Motion for Relief from the Automatic Stay with respect to

establishing liability, if any, and the fixing of damages, if any, arising out of the alleged post-

petition breaches of the JDAs and/or post-petition breaches of fiduciary duty.  Again, this does

not mean that Altis can proceed on a theory that it was harmed post-petition by a pre-petition

---

[10]  The Court also recognizes the tension between the *Sunbeam Products* decision and the Fourth Circuit's decision
in *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985).  *Sunbeam Products* is
cited above solely for the proposition that the executory contract is not "vaporized."

breach.  Rather, Altis can proceed to the establishment of liability and damages based solely on breaches actually occurring post-petition.[11]

Pursuant to 11 U.S.C. § 1521(a)(2) (which provides that the Court can stay execution against the debtor's assets to the extent not stayed under Section 1520(a)), Altis will not be entitled to enforce any judgment it obtains against assets of the Debtor located within the territorial jurisdiction of the United States, without first being granted relief from the automatic stay.  Whether any award of damages rises to the level of an administrative expense will be determined either by this Court, or by the German Court, at a later date.

## CONCLUSION

For the foregoing reasons, the Court will order that:  (1) Altis's lawsuit against Qimonda, insofar as it alleges pre-petition breaches of the JDAs, and/or pre-petition breaches of confidentiality, is a violation of the automatic stay under 11 U.S.C. § 362(a)(1), and will be enjoined (or alternatively, will be enjoined pursuant to 11 U.S.C. § 1521(a)(1));  (2) Altis's request that the District Court declare the sale to Adesto "void" is an impermissible collateral attack on this Court's March 11th Order, and will be enjoined; (3) Altis will be enjoined from seeking relief under Paragraph 2 of its Prayer for Relief, that the "Defendants be enjoined from selling or licensing any intellectual property co-owned with Altis through [the parties'] joint development relationship to the detriment of Altis," as being an impermissible attempt to exercise control over property of the debtor within the territorial jurisdiction of the United States under 11 U.S.C. § 1520(a)(1); (4) Altis's Motion for relief from the automatic stay will be granted in part, as to any alleged post-petition breaches of the JDAs and/or alleged violations of fiduciary duty.  Pursuant to 11 U.S.C. § 1521(a)(2), Altis will not be permitted to collect any

---

[11]   For the reasons stated above, the Court also finds that the *Barton* doctrine has been satisfied as to the establishment of liability and damages for any alleged post-petition breaches of confidentiality.

judgment as to assets of the debtor located within the territorial jurisdiction of the United States,

absent further Order of this Court.  Whether or not such post-petition claims rise to the level of

administrative expenses will have to be determined by either the German Court or this Court;

and (5) the Altis lawsuit is not a violation of the stay as to Qimonda Licensing, and the Court

will decline to extend the stay as to Qimonda Licensing.  A separate Order shall issue.


Date: _____          _____
                                      Brian F. Kenney
Alexandria, Virginia                  United States Bankruptcy Judge




Copies to:

Qimonda AG
Gustav-Heinermann-Ring 212, 81739
Munich, GERMANY 22314
Debtor

Jeffrey Anderson Showalter, Esquire
Morrison & Foerster LLP
1650 Tysons Blvd. Suite 400
McLean, VA 22102
Counsel to Debtor

William A. Gray, Esquire
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998
Counsel to Debtor

Michael Jaffé, Insolvency Administrator
c/o Cole Schotz Meisel Forman, et al
300 East Lombard St., Suite 2000
Baltimore, MD 21202
Insolvency Administrator

G. David Dean, Esquire
Cole, Scholz, Meisel, Forman & Leonard
300 E. Lombard St., Suite 2000
Baltimore, MD 21202
Counsel to Insolvency Administrator

John Alexander Trocki, III, Esquire
Morrison & Foerster LLP
1650 Tysons Blvd., Suite 400
McLean, VA 22102
Counsel to Insolvency Administrator

Peter J. Carney, Esquire
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Counsel to Altis Semiconductor SNC

Roberto J. Kampfner, Esquire
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Counsel to Altis Semiconductor SNC